Carl O. TURNQUIST, also known as C. O. Turnquist, Plaintiff and Respondent,

v.

Ole KJELBAK, John A. Ekren, also known as John A. Ekern, Adolph Segelbaum, Anders Joa, Janney Semple Hill & Company, a corporation, of Minneapolis, Minnesota, Massey Harris Company, a corporation, of Racine, Wisconsin, St. Paul Bank, a banking corporation, of St. Paul, Minnesota, First National Bank, a national banking corporation, of Minneota, Minnesota, John A. Graham, State Examiner, and Successor to the Receiver of the Farmers State Bank, a defunct banking corporation, of Rawson, North Dakota, McKenzie County, North Dakota, a public corporation, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the complaint, Defendants.

John A. Ekren, also known as John A. Ekern, Defendant and Appellant.

No. 7567.

Supreme Court of North Dakota.

July 13, 1956.

Rehearing Denied Aug. 9, 1956.

Hyland & Conmy, Bismarck, for appellant.

John O. Garaas, Watford City, for respondent.

GRIMSON, Judge.

This is an action to quiet title in the plaintiff to the following described land:

Southwest Quarter of the Southwest Quarter (SW¼SW¼) of Section Fifteen (15); Northwest Quarter of the Northwest Quarter (NW¼NW¼) of Section Seventeen (17); South Half of the Northwest Quarter (S½NW¼) Northwest Quarter of the Northwest Quarter (NW¼NW¼) of Section Twenty-two (22), in Township One Hundred Forty-eight (148), North of Range One Hundred One (101) West of the Fifth Principal Meridian, McKenzie County, North Dakota.

The complaint is in statutory form. The record shows that service was made by publication upon the defendant, John A. Ekren. He defaulted. Judgment was entered quieting title in the plaintiff, Dec. 11, 1953. On the 3rd day of August, 1955, motion was made on behalf of defendant, John A. Ekren, also known as John A. Ekern, to open up the judgment rendered on Dec. 11, 1953, and to allow the said defendant to interpose an answer and a counterclaim. Ground alleged for the said action was that no proper return of attempted service by the sheriff upon the said defendant was shown so that the court never had obtained jurisdiction over

him. The motion was denied. Defendant, John A. Ekren appeals.

The plaintiff's first specification of error is: "The court erred in holding that the return of the sheriff of "Defendant Not Found" was sufficient as to substance to give the court jurisdiction to render judgment by default." He first contends the deputy sheriff has no authority to make the return.

Section 28–0620 NDRC 1943, provides: "Summons may be served upon any defendant by publication * * * [subsection 4,] when personal service cannot be made on such defendant in this state to the best knowledge, information and belief of the person making the affidavit mentioned in section 28–0621 NDRC 1943, and such affidavit is accompanied by the return of the sheriff of the county in which the action is brought stating that after diligent inquiry for the purpose of serving such summons he is unable to make personal service thereof upon such defendant."

Section 28–0621 NDRC 1943, provides that before service by publication may be had there shall be filed a verified complaint, stating a cause of action against the defendant and also an affidavit stating grounds for such service. One of these grounds is that the action is for the purpose of quieting title to real estate, Sub-Section 3. Such affidavit was filed by the plaintiff, together with the following return of the sheriff, omitting title:

"State of North
  Dakota
                          ss.
"County of Mc-    Sheriff's    Return
   Kenzie           Defendant Not
                       Found.
   "I, J. J. Zitek, Sheriff of said County, hereby certify and return that the summons, complaint and Notice of No Personal Claim in the above entitled action which are hereunto attached came into my hands for service on the

5th. day of August, 1952, and that I have made diligent search and inquiry for the above named defendants * * John A. Ekren, also known as John A. Ekern; * * * upon whom to make legal service of said Summons, Complaint, and Notice of No Personal Claim but after such search and inquiry for the purpose of serving such Summons, I have been unable to find said defendants in McKenzie County, North Dakota, or to make personal service of said Summons upon said Defendants.

"Dated this 5th. day of August 1952.
"J. J. Zitek
"Sheriff of McKenzie County, N. Dak.
"By Helen L. Arildsen,
"Deputy."

The complaint, an affidavit and the sheriff's return were duly filed as provided in these sections.

We will first consider the authority of the sheriff's deputy in matters of this kind.

"Section 11–1011 NDRC 1943 makes provision for the appointment of deputies by the sheriff.

Generally the sheriff may do in person or by deputy whatever the statute expressly authorizes him to do as respects service of process. Aversa v. Aubry, 303 Pa. 139, 154 A. 311. In Scofield v. Wilcox, 33 N.D. 239, 156 N.W. 918, 919, this court interprets the decision in Wilson v. Russell, 4 Dak. 376, 31 N.W. 645, and Summerville v. Sorrenson, 23 N.D. 460, 136 N.W. 1038, 42 L.R.A.,N.S., 877, as holding "That the official acts of a deputy sheriff are the acts of the sheriff."

In Wilson v. Russell, supra [4 Dak. 376, 31 N.W. 650], the authority of the deputy sheriff and his methods of procedure are considered. The court says:

"An examination of the provisions of our Codes relating to the office and duties, powers and prerogatives, of a sheriff, shows that the sheriff is an elective county officer, vested with certain powers and authority, and required to perform certain acts, and empowered to appoint deputies, and acting in his own person, or by and through his deputies appointed only by himself; and, in either case, whether acting himself or through his deputy, the act done, if within the scope of his authority, is the official act of the sheriff. * * * He is called 'deputy-sheriff,' which means the deputy of the sheriff. He is 'one appointed to act for another,' and not in his own name, person, or right. An execution or other writ is directed to the sheriff, and never to his deputy, and the deputy may execute the writ and make return; but cannot legally do it in his own name or office as deputy, independent of the sheriff, and must do it for and by the authority and in the name of the sheriff for whom and in whose stead he acts."

Thompson Bros. v. Phillips, 198 Iowa 1064, 200 N.W. 727, was an action to set aside a judgment by default on the ground that the return of the service on appellants was defective and conferred no jurisdiction on the court because it was signed in the name of the sheriff by his deputy. The court held:

The "sheriff's return of service is properly made and signed in his name, by deputy making service. * * * The act of the deputy is the act of the sheriff; he has no original power, but acts as the representative or agent of the sheriff, who is the principal. Headington v. Langland, 65 Iowa 276, 21 N.W. 650."

In Reinhart v. Lugo, 86 Cal. 395, 24 P. 1089, 21 Am.St.Rep. 52, it was said: " 'The act and return of a deputy is a nullity, unless done in the name, and by the authority, of the sheriff.' " That is the holding of this court in Summerville v. Sorrenson, 23

N.D. 460, 136 N.W. 938, 42 A.L.R.,N.S., 877. Clearly the return of "Defendant Not Found" in the sheriff's name by the deputy sheriff in the case at bar was proper.

■ It is also contended by the appellant that the deputy sheriff can only carry out the ministerial duties of the sheriff. He claims that in the performance of his duties the sheriff in making return of "Defendant Not Found" in connection with service by publication is vested with a discretionary power in the exercise of judgment as to the diligence he must exercise, in other words, that he is exercising judicial power. In that appellant is in error. The sheriff, himself, is a ministerial officer. In 47 Am. Jur., Sheriff, Police and Constables, Section 3, p. 822, it is said: "Sheriffs, constables and United States Marshals are ministerial officers." See also 80 C.J.S., Sheriffs and Constables, § 35, p. 204; Mechem on Public Officers, Section 7445, p. 86.

"Official action, the result of performing a certain specific duty arising from designated facts, is a ministerial act. Grider v. Tally, 77 Ala. 422, 54 Am.Rep. 65. Another way of expressing the same thought is that a duty is to be regarded as ministerial when it is a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated; the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion. Mechem, Public Offices and Officers, (1890) par. 658, p. 442. And that a necessity may exist for the ascertainment, from personal knowledge or from information derived from other sources, of those facts or conditions, upon the existence or fulfillment of which, the performance of the act becomes a clear and specific duty, does not operate to convert the act into one judicial in its nature. Grider v. Tally, supra;" First National Bank of Key West v. Filer, 107 Fla. 526, 145 So. 204, 207, 87 A.L.

R. 267. See also Stephens v. Jones, 24 S.D. 97, 123 N.W. 705; Vallindras v. Massachusetts Bonding & Ins. Co., 42 Cal.2d.149, 265 P.2d 907; Campbell v. Parker, 59 N.J.Eq. 342, 45 A. 116.

Section 28–0620(4) NDRC 1943, requires the sheriff to make a return in case he cannot find the defendant, "stating that after diligent inquiry for the purpose of serving such summons he is unable to make personal service thereof upon such defendant." That is a direct mandate of law describing the manner in which he must act. It does not give him any discretion or right to act in any other way.

Section 1–0111 NDRC 1943 provides: "Any duty imposed upon a ministerial officer, and any act permitted to be done by him, unless otherwise provided, may be performed by his lawful deputy."

We conclude that the sheriff's return, "Defendant Not Found" as executed in this case is sufficient.

The appellant's second specification of error is that the court erred in holding that the plaintiff and sheriff used due diligence in attempting to ascertain the residence or residences of John A. Ekren also known as John A. Ekern.

The appellant claims that, even if the deputy sheriff may make the return, the substance of what is stated in the return is insufficient to show compliance with the law. He claims that the return does not sufficiently show diligence and that the wording limits it to McKenzie County. The sheriff's return must be read as a whole to determine if it bears out the statute and when that is done it reads:

"I have made diligent search and inquiry for the above named defendant, * * * John A. Ekren, also known as John A. Ekern, * * * upon whom to make such legal service of summons and complaint and notice of no personal claim but after such search and inquiry for the purpose of serving

such summons I have been unable to find said defendants in McKenzie County, or to make personal· service of such summons upon said defendants."

While the return states the defendant cannot be found in McKenzie County, that does not limit the last clause in which he states, positively and in the alternative, that he is unable to make personal service of said summons upon the defendant. It is sufficient if the sheriff's return shows the things which the statute requires in words and phrases of the same meaning as those of the statute and importing all that is required from the statute even if in different arrangement. Coman v. Williams, 78 N.D. 560, 50 N.W.2d 494. Clearly that return states that the sheriff made diligent search and inquiry for the purpose of serving the summons, and that after such search and inquiry he was unable to make personal service upon the defendant Ekren. That is all that is required to be stated in the return. Smith v. Mountrail Co., N.D., 70 N.W.2d 518.

The plaintiff's attorney in the affidavit for publication states definitely that the action is one to determine adverse claims; that the defendant, Ekren, cannot be located and that his residence is unknown to the affiant and personal service cannot be made upon him in this state to the best information, knowledge and belief of affiant and he refers to the return of the service by the sheriff of McKenzie County, heretofore quoted.

The requirements of the statutes, Section 28–0620 and Section 28–0621 NDRC 1943, are met in both the affidavit and the sheriff's return. Prima facie, they are sufficient as a basis for service by publication. They can only be successfully overcome by clear and satisfactory evidence.

In Thompson Bros. v. Phillips, 198 Iowa 1064, 200 N.W. 727, it is said that the "Sheriff's return of service is not conclusive, but is strong evidence of facts, as to which law requires him to certify, and should ordinarily be upheld, unless contradicted by clear and satisfactory proof." In Howard v. Drinkard, 261 Ala. 555, 74 So.2d 704, it is said: "A strong presumption is indulged in favor of correctness of a sheriff's return, and party challenging it, whether at law or in equity, has burden of establishing lack of service by clear and convincing proof." In Osman v. Wistad, 78 Minn. 295, 80 N.W. 1127, it is said:

"To set aside and vacate a judgment on the ground that such a return [of the sheriff] is false, the proof of its untruthfulness must be positive, satisfactory, and convincing. Jensen v. Crevier, 33 Minn. 372, 23 N.W. 541."

On this hearing the appellant controverts the claim that due diligence was used. In support thereof he files the affidavits of John A. Ekren, A. S. Ekren and H. M. Ekren. As grounds for showing that plaintiff did not use due diligence in obtaining the address of said defendant, John A. Ekren, in his affidavit, says:

"That C. O. Turnquist knew my ex-wife, Sofie Johnson Ekren, now Mrs. R. T. Strand of Seattle, Washington and said Sofie Johnson Ekren was in communication with me through our sons at all times dating back to 1941. Further that said Sofie Johnson Ekren knew one of the neighbors, Leif Gravos. Furthermore that Mr. Leif Gravos had an uncle living here in Seattle, who in turn kept Mrs. Sofie Johnson Ekren fully informed as to what was going on back in McKenzie County."

He also claims that he had brothers living near Kensal, Stutsman County, North Dakota, whom plaintiff knew since the days plaintiff and J. A. Ekren homesteaded in McKenzie County. Also that one Drovdahl and plaintiff were great friends and that Drovdahl and defendant's brother, H. M. Ekren, served together as North Dakota legislators. He further claims that

the plaintiff had visited his wife while she was sick in the hospital at Jamestown several times and upon such visits also stopped at his brother Ekren's place near Kensal. Through inquiry of these people it is claimed plaintiff could have ascertained the address of defendant, Ekren. The other affidavits corroborate Ekren's statement that his brothers lived at Kensal, which is over 300 miles from where plaintiff lives, and that they could have supplied his address in Alaska if asked.

At the hearing on the motion plaintiff, in answer to defendant's claims, testified that he had homesteaded in McKenzie County in 1910; that John A. Ekren homesteaded nearby on the land in question. He admitted visits back and forth, and through such visits becoming acquainted with defendant's brothers. He denies ever having visited the brothers at Kensal or knowing that they still were there in 1952, or that one of Ekren's brothers served with Drovdahl in the legislature. His brother, Victor, had visited Kensal in 1932 or 1935 but he died in 1950. Plaintiff denied knowing that defendant Ekren's wife lived in Seattle. He claims that John A. Ekren left his farm in 1912 and was back only occasionally thereafter and that the last time he saw defendant, Ekren, was in '38 or '39 when Ekren was selling a truckload of apples he had brought from the west. Plaintiff's and Ekren's acquaintance had never been intimate and was not maintained when Ekren moved away. Plaintiff claims he asked where Ekren resided whenever he could but nobody knew where Ekren was when this action was commenced.

The plaintiff's attorney, John Garaas who made this affidavit for publication, testified as to the search he had made in the offices of the register of deeds and county auditor and clerk of court of McKenzie County, and the inquiries he made of longtime residents of McKenzie County who had served in those offices and were well acquainted with the people of the county. From such investigation and diligent inquiry he came to the conclusion that the residence of John A. Ekren was unknown, and that personal service on the defendant Ekren in this state could not be made as stated in his affidavit.

John J. Zitek, the sheriff, testified that he had been a resident of McKenzie County 43 years during which time he served ten years as sheriff of McKenzie County and four years as deputy sheriff, beginning in 1939. Prior to that he was an electrician living at Alexander, 15 miles from plaintiff. He testified that he knew the people in the community where this land lay and was acquainted with about 80 or 85 percent of the older people in the county; that he had known John A. Ekren about 25 years ago but did not know his brothers and that he had found no way of ascertaining the residence of John A. Ekren; that his deputy, Helen Arildson, who was not called to testify, was living in Montana, but that she had lived in the county about forty years and was well acquainted with the people of the county; that she was admitted to the practice of law in this state.

Thus it appears that the sheriff and the attorney showed a good basis for their return and the affidavit for publication. The defendant's claim of no diligence on the part of the plaintiff is based on the failure to make inquiries of acquaintances of some 30 years prior to the commencement of this action, none of whom had lived in that territory during that time and with whom Ekren had not kept up acquaintanceship. He had not known where Ekren was for at least 12 years. It does not seem reasonable that to constitute due diligence the plaintiff or sheriff should have to trace defendant's wife to Seattle or his brothers, who some 30 years before had lived at a place 300 miles away, or to ask somebody about them who, without plaintiff's knowledge, had served with one of them in the legislature sometime during that period. Ekren claimed that Leif Gravos was still living in that neigborhood and should have known Ekren's former

wife. Plaintiff had talked with Gravos and found that he did not know where Ekren lived. No one else in that neighborhood was pointed out as knowing what Ekren's residence was at the time of the commencement of the action. It appears on the hearing that he had been in Saldovia, Alaska, at that time and that he could not have been served with summons in North Dakota until he came visiting there in March 1955.

Webster's International Dictionary, 2nd. Ed. defines 'diligence' as used in law as follows: "The attention and care required of a person in a given situation:—the opposite of negligence."

The term "diligent search" as used in the return of an officer on an execution, reciting diligent search for the debtor, means reasonable effort to find him. In Re Bailey, 132 Mass. 457, 461, "A diligent search for a person is satisfied by such search and inquiry as a reasonably prudent person would make in view of the circumstances." Donea v. Massachusetts Mutual Life Ins. Co., 220 Minn. 204, 19 N.W.2d 377.

The evidence clearly shows that defendant, Ekren, has failed to show by clear and convincing evidence that the affidavit for publication and return of the sheriff, "Defendant Not Found", were false, insufficient or incorrect.

Defendant finally claims that, even if the service by publication were good, the court erred in refusing to reopen the judgment. He argues that the answer shows a meritorious defense. He claims to come under Section 28–0627 NDRC 1943, which provides that "except in an action for divorce" the defendant, on whom service by publication is made, upon good cause and meritorious defense shown, may be allowed to defend the action within three years after the entry of judgment. He claims the phrase, "except in actions for divorce" makes that section apply to all other actions. In that he is in error. Section 32–1713 NDRC 1943 provides that in an action to determine adverse claims the defendant on good cause shown may be allowed to defend both before or "after trial and within one year after the rendition of judgment therein, but not otherwise." The action in the case at bar was for the purpose of determining adverse claims and comes under Section 32–1713 NDRC 1943. Hart v. Hone, 57 N.D. 590, 223 N.W. 346; Burtman v. Skeie, N.D., 70 N.W.2d 401; Stewart v. Berg, N.D., 65 N.W.2d 621; Gibbons v. Clapp, 207 Cal. 221, 277 P. 490.

The court had jurisdiction to enter the judgment in the present case Dec. 11, 1953. The application that the defendant be allowed to open up the judgment and enter a defense was dated July 12, 1955, and heard August 3, 1955. More than a year had expired since the entry of judgment in the original default action. Section 32–1713 NDRC 1943 bars the opening of the judgment under these circumstances. It is, therefore, not necessary to pass on the merits of the proposed answer. The motion was properly denied.

The order of the district court is affirmed.

BURKE, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.